UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARILYN WILLIAMSON, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | CASE NO.: 2:20-cv-06839-AB (PD) <br><br> FINDINGS OF FACT AND CONCLUSIONS OF LAW <br><br> Honorable André Birotte Jr. <br> United States District Judge |

The Court conducted a bench trial on February 16, and March 1, 2022, on Plaintiff Marilyn Williamson's ("Plaintiff") claim against the United States of America ("Defendant") under the Federal Tort Claims Act (FTCA), 28 U.S.C. 1346(b), 2671, *et seq*. Before trial, the parties filed deposition excerpts and declarations in lieu of live testimony for some witnesses and agreed to their admission at trial. These materials and other evidence were filed as Dkt. No. 56.

The Court has considered all of the evidence filed in advance of trial and presented during trial, and the parties' post-trial proposed orders. In accordance with Federal Rule of Civil Procedure 52(a), the Court now makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

1.  The United States Postal Service ("USPS") is an agency of the United States of America. (Final Pretrial Conference Order (Dkt. No. 51) Admitted Fact ("AF") 1.)

2. The USPS controls and maintains Glendora branch office. (AF 2.)

3. The Glendora branch of the USPS is located at 255 S. Glendora Avenue, Glendora, California. (AF 3.)

4. The incident at issue in this case is that Plaintiff fell upon entering the Glendora branch of the post office, on December 10, 2018, between 11:00 a.m. and 12:00 p.m. (AF 4, 6.)

5. A video of the incident was recorded on a USPS interior camera. (AF 18, 10.) The video was filed as Exhibit 1. The video is a bit fuzzy and partially obstructed by other patrons.

6. On December 10, 2018, at around 11:00 a.m., Plaintiff drove to the Glendora post office. (AF 7.)

7. Plaintiff parked her car and walked to the post office entrance. (AF 8.)

8. Plaintiff entered the post office through the front door. (AF 9.)

9. Plaintiff fell upon entering the lobby of the USPS Glendora branch office. (AF 12.)

10. Plaintiff fell to the floor, her face and right shoulder contacting the floor. (AF 13.)

11. Plaintiff remained on the floor. (AF 14.)

12. None of the witnesses saw Plaintiff fall.

13. Plaintiff was taken by ambulance to the Foothill Presbyterian Hospital. (AF 15.)

14. Plaintiff was diagnosed with a right humeral fracture. (AF 16.)

15. Postmaster Sonia Telles-Simpson took photos of the scene (4 days after the incident) on December 14, 2018. (AF 17.)

16. The photos provided to the Court are poor resolution. However, they show that there is a doormat inside the post office, and that its edge is placed right up against the edge of the threshold of the door. There appears to be no clearance between the edge of the mat and the edge of the threshold.

17. Prior to December 10, 2018, approximately 400 patrons a day would enter the Glendora post office. (Alice Martinez Depo. (Ex. 3) 26:20-27:1.[1])

18a. A contractor, Cintas, normally supplied and maintained the doormat in the lobby. But for a short time, which included when this accident occurred, the contract with Cintas was suspended and the Defendant supplied its own mat and maintained it. The mat involved in Plaintiff's accident was supplied by Defendant; it was not a Cintas mat. (Telles-Simpson Depo. (Ex. 6) 53:2-54:11.)

18b. Postmaster Sonia Telles-Simpson, when entering the Glendora post office prior to December 10, 2018, would notice daily a mat right up against the threshold. (*Id.* 83:7-11.)

19. Postmaster Sonia Telles-Simpson authorized the placement of a mat with its edge right next to the threshold because "It squares off really nice with the frame of the door." (*Id.* 57:1-16.)

20. Postmaster Sonia Telles-Simpson, based on her training and experience as of December 10, 2018, understood that if the mat edge was on the threshold it would create a tripping hazard. (*Id.* 45:21-25.)

21. Post office janitor, Jose Torrez, in December 2018 would correct the placement of the mat when he found misplaced on the threshold, a mat corner on the threshold, or the mat tilted upon the threshold. (Torrez Depo. (Ex. 5) 19:13-23.)

22a. Glendora post office lead window clerk, Alice Martinez, would request the mat/carpet near the entrance doors of the lobby be taped down during rainy days. (Alice Martinez Depo. 34:24-35:6.)

22b. Alice Martinez also testified that it seemed safe for the mat to be about 5" from the lip of the threshold which is far enough away from the threshold

---

[1] Plaintiff cited the ECF page numbers, and sometimes inaccurately. The Court instead cites the page numbers of the deposition excerpts, as those are constant.

3

that a customer's foot wouldn't catch it. (*Id.* 36:20-37:25.)

23. Eran Geledzhyan is a supervisor of customer service at the Glendora post office and janitor Jose Torrez's immediate supervisor. It was her understanding that the edge of the carpet/mat was to be "a little away from the door not on the metal where the door opens." (Eran Geledzhyan Depo. (Ex. 4) 12:11-23.)

24. Eran Geledzhyan had the carpet/mat taped down on occasion 6" to 5" away from the lip of the threshold so that the carpet/mat was not near or on the top of the threshold. (*Id.* 24:8-18.)

25. In the video (Ex. 1), at 11:24:44[2], Plaintiff, who was 82-years old, is seen approaching the threshold of the post office entrance with a purse in her right hand. Plaintiff is also pulling a small cart with packages with her left hand.

26. In the video, at 11:25:45, Plaintiff attempts to cross the threshold into the Glendora post office through the main entrance. The door on her left, as she enters, was opened to the outside by a patron standing inside the entrance.

27. In the video, at 11:24:46, Plaintiff takes a step with her left leg to cross the threshold, but her forward momentum is stopped. She starts to then take a step with her right leg, but her momentum is stopped.

28a. In the video, at 11:24:47, Plaintiff starts to fall. As Plaintiff is falling forward, Plaintiff's left foot is in contact with and is caught on the underside of the mat, causing the corner of the mat to flip over onto itself. Plaintiff's right foot also stops at about where the mat and the threshold meet, catches on the mat, and does not clear the threshold until Plaintiff is falling forward.

28b. In the video from 11:24:47 to 11:24:48, the cart Plaintiff had been pulling with her left hand bounces off the underside of the mat after the corner of the

---

[2] The times are taken from the timestamp on the video footage itself.

4

mat had already flipped over onto itself.

29. The cart Plaintiff was pulling behind her was not the cause of the mat flipping over, nor does it appear that the cart caught the door.

30. In the video from 11:24:47 to 11:24:48, Plaintiff reaches out with her right arm to break her fall as she is turning to her left slightly due to her left foot still in contact with the bottom of the mat. Plaintiff then strikes the floor with the right side of her face bouncing off the floor.

31. Jose Torrez was called to clean blood off the floor from a laceration to Plaintiff's face near her right eye. (Jose Torrez Depo. 22:6-10.)

32. Paramedics are called as Plaintiff remains on the floor and she is transported via ambulance to Foothill Presbyterian Hospital. (Ex. 2.)

33. Plaintiff was diagnosed with a right humeral fracture. (AF 16.)

34. Plaintiff sustained a 0.5 centimeter laceration lateral to her right eyebrow. A CT scan of her head revealed left tissue swelling in the right periorbital region. An x-ray of her right humerus demonstrated acute comminuted right humeral neck fracture. An immobilizer was placed at Foothill Presbyterian Hospital. (Gary Painter Decl. ¶ 5.)

35. On December 21, 2018 and January 14, 2019, Plaintiff was examined at Kaiser Ontario with imaging confirming a 2-part surgical neck proximal humerus fracture and a shoulder humeral brace was applied. (*Id.* ¶ 6.)

36. On January 21, 2019, Plaintiff was assessed at Kaiser Rancho Cucamonga for right hip pain due to her adjusting her movements while using a brace for her broken shoulder. Her left groin muscle strain was assessed. (*Id.* ¶ 8.)

37. On March 4, 2019, Plaintiff was assessed at Kaiser Ontario and a referral to physical therapy at Casa Colina was given. (*Id.* ¶ 9.)

38. On March 10, 2019, Plaintiff started a course of physical therapy lasting 17 visits consisting of manual therapy, therapeutic exercises, and neuromuscular re-education. (*Id.* ¶ 10.)

39. On August 3, 2021, Plaintiff was examined by Dr. Gary Painter. Dr. Painter diagnosed a comminuted neck fracture of the right shoulder. Dr. Painter's exam demonstrated 50% permanent loss of her shoulder mobility due to abnormal healing of her fracture as well as scar tissue formation. Additionally, at the extremes of motion of her right shoulder, she will permanently experience mild pain and discomfort. (*Id.* ¶ 13, 5:9-28.)

40. On August 14, 2021, Plaintiff was evaluated by psychiatrist Dr. Brian P. Jacks. Psychological testing was performed including Beck Anxiety Inventory, Beck Depression Inventory, Walther Physical Symptoms inventory, Epworth Sleepiness Scale, MMPI (Minnesota Multiphasic Personality Inventory) and a Mini Mental Status Examination. (Brian Jacks Decl. (Ex. 13) 1:11-18.)

41. Dr. Jacks diagnosed Plaintiff with dysthymia or chronic intermittent persistent depression. Plaintiff worked to the age of 75 as a waitress. She was 82 at the time of the December 10, 2018 trip and fall injury. Prior to this, she reported she used to feel like she was sixty. After the fall, her life changed dramatically with her inability to play with her grandchildren and participate in other activities. Dr. Jacks recommended 18 months of weekly cognitive behavioral therapy and anti-anxiety medications. Dr. Jacks opined the need for the treatment was completely caused by the injury. (*Id.* 10:13-12:22.)

42. Plaintiff's past medical expenses for reasonable and necessary treatment of injuries from the December 10, 2018 fall total $2,943. (AF 19.)

43. Any finding of fact deemed to be a conclusion of law is hereby incorporated into the conclusions of law. Any conclusion of law deemed to be a finding of fact is hereby incorporated into the findings of fact.

**CONCLUSIONS OF LAW**

**I.      Waiver of Sovereign Immunity as to Plaintiff's Claim**

1a. Under the Federal Tort Claims Act ("FTCA"), the United States has only waived its sovereign immunity for liability under circumstances where a private person would be liable in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b)(1).

1b. It is undisputed that Defendant has waived sovereign immunity as to Plaintiff's claim for negligence-premises liability.

## II. Premises Liability

2. Cases brought under the FTCA are governed by the "law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

3. To prove her negligence-premises liability claim, Plaintiff has the burden of proving by a preponderance of the evidence: Defendant had a legal duty to use due care; Defendant breached that duty; and Defendant's breach was proximate or legal cause of Plaintiff's resulting injury. *Jackson v. Ryder Truck Rental, Inc.*, 16 Cal. App. 4th 1830, 1837 (1993).

4. With respect to a premise liability claim, the basic duty of care of a landowner is to "use reasonable care to discover any unsafe conditions and to repair, replace, or give adequate warning of anything that could be reasonably expected to harm others." California Civil (Jury) Instructions 1001.

## III. Vicarious Liability, Employers, Notice

5a. Generally speaking, a property owner must have actual or constructive knowledge of a dangerous condition before liability will be imposed. In the ordinary slip and fall case, an employee is not necessarily the cause of the dangerous condition. But where a "plaintiff produces evidence from which a reasonable inference can be drawn that the dangerous condition was created by defendant or its employees, defendant is charged with notice of the dangerous condition." *Getchell v. Rogers Jewelry*, 136 Cal. Rptr. 3d 641, 642 (Cal. App. 3d Dist. 2012).

7

5b. Here, as discussed below, Defendant's employees placed the mat up against the threshold and thereby created a dangerous condition. By placing the mat against the threshold, Defendant's employees created the risk that the edge of the mat would encroach on the threshold itself and/or become slightly upturned, creating a tripping hazard. Defendant's employees testified that if the mat were on the threshold, that would be a dangerous condition. This is sufficient to establish that Defendant had notice of the dangerous condition.

5c. Defendant suggests it had no notice of a dangerous condition because its employees testified that, during their respective tenures, they were not aware of anyone else ever tripping while entering the post office or complaining that the mat created a hazardous condition. However, the fact that no prior incidents or complaints occurred does not negate notice of the dangerous condition. First, the contractor Cintas generally supplied and maintained the doormat before Plaintiff's accident, but for a short time that included the date of the accident, the Cintas contract was suspended and Defendant supplied a different doormat and maintained it itself. As such, because the circumstances surrounding the doormat were different during the Cintas contract, the Court cannot find that the prior accident-free years establish the lack of notice of a dangerous condition on the date of the accident. Second, Defendant had notice that the mat edge encroaching on the threshold would be a dangerous condition, as its own employees testified that someone could catch on the mat edge, and that there should be some distance (5"-6") between the mat edge and the threshold edge. Third, despite this, the mat was placed immediately alongside the threshold, with their edges in contact. This created the obvious risk that the edge of the mat could become upturned on the threshold, causing a tripping hazard. For all of these reasons, despite the absence of prior incidents, Defendant (1) had notice (2)

of a dangerous condition.

## IV. Duty of Care Owed to Plaintiff

6. The court concludes the duty owed to Plaintiff was an affirmative duty to protect Plaintiff from dangers that were foreseeable. The scope of the duty the Defendant owed to Plaintiff included protecting her from a danger known to postmaster Sonia Telles-Simpson. Sonia Telles-Simpson and other employees knew that the mat on the threshold created a foreseeable tripping hazard.

## V. Breach of the Duty of Care and Causation

7. Plaintiff has proved by a preponderance of the evidence that by placing the mat against the threshold and noticing that it would move or migrate onto the threshold, due to the foot traffic of hundreds of patrons, Defendant created a dangerous condition. It was foreseeable that a patron such as Plaintiff could catch the edge of the mat on the threshold while striding over the threshold and trip. Defendant could easily have placed the mat away from the threshold and/or taped it down.

8a. The video of the fall shows that it is more likely than not that a portion of the mat was directly against or slightly on the threshold as Plaintiff attempted to step into the Glendora post office, and that Plaintiff's foot was caught on that part of the mat. Plaintiff's left foot is seen in contact with the bottom of the mat as a corner of the mat flips over onto itself as she falls to the floor. The doormat extending onto at least the lip of the threshold is a tripping hazard, and is exactly the foreseeable risk created by Defendant's employees placing the mat right up against the edge of the threshold. Therefore, the Court finds that Defendant breached its duty of care by permitting a dangerous condition to exist—permitting at least the edge of the mat to be against, if not slightly on top of, the edge of the threshold—and that this condition caused Plaintiff to trip and fall.

8b.     Defendant's expert John Tyson, P.E., opined that the cause of Plaintiff's fall could not be determined, and that why the mat flipped up as Plaintiff was crossing the threshold cannot be forensically determined. However, upon careful and repeated viewings of the video, it appears that the mat turns up just as Plaintiff's momentum is interrupted. It does not appear that Plaintiff stubbed her toe on the threshold, rather it appears that her foot caught the edge of the mat, and that it is more likely than not that the mat was encroaching on the threshold and/or slightly upturned on the threshold, otherwise Plaintiff's foot would not have caught it.  Perhaps the encroachment was only slight, but all the same that is a dangerous condition that foreseeably results from placing the mat square to the threshold, with their edges meeting, as Ms. Telles-Simpson testified was her preference.

## V.     Comparative Negligence

9.     Insofar as Defendant asserts the defense of comparative negligence, Defendant must prove by a preponderance of the evidence that Plaintiff was negligent and that her negligence was a substantial factor in causing her harm. California Civil (Jury) Instructions 405 (December 2009.)

10.     Plaintiff was reasonable when using her left hand to pull a cart to transport her packages instead of carrying them and holding her purse in the right hand in order to pay for the postage. Based on the very brief footage of Plaintiff at the post office door just prior to her fall, Plaintiff's gait was at a reasonable pace: Plaintiff appeared to be walking at an ordinary, somewhat slow speed and with care, and she was not rushed or obviously distracted by anything. Plaintiff's line-of-sight was not obstructed by anything she was carrying, including the purse which was slightly to her right side. Plaintiff also extended her right arm to break her fall. Therefore, the Court finds that neither Plaintiff's gait nor the fact that she was using both hands, nor anything else about her conduct entering the post office, was unreasonable

or played any part in her fall. Thus, the court concludes Defendant failed to prove by a preponderance of the evidence that Plaintiff was at fault in any way when she fell at Defendant's premises.

## VI. Damages

11. Defendant does not contest that Plaintiff's fractured humerus and facial laceration occurred as a result of the fall she experienced when she entered the Glendora post office.

12. The Court finds Plaintiff has sustained past and future pain and suffering regarding her fractured humerus and permanent partial loss of range of motion with pain when attempting right shoulder range of motion.

13. The Court finds Plaintiff and Dr. Brian P. Jacks, a psychiatrist, both consistently and credibly testified about changes in behavior of 82 year old Plaintiff Marilyn Williamson as a result of the fall. Plaintiff was active and independent before the fall and due to the incident has developed chronic intermittent persistent depression or dysthymia. Plaintiff has suffered a decrease in confidence concerning her mobility and a negative change in her self-image decreasing her enjoyment of life.

14. Plaintiff is entitled to $2,943.41 in economic damages per the admitted facts for past medical expenses in the Pretrial Order.

15. Plaintiff suffered and continues to suffer from pain as a result of her injuries. She no longer enjoys some of her previous activities which have reduced her enjoyment of life. The Court finds that Plaintiff is entitled to $65,000.00 in non-economic damages for pain and suffering.

//
//
//

Accordingly, Judgment shall be entered in favor of Plaintiff in the amount of $67,943.41. Plaintiff to file a Proposed Judgment within 3 days. Defendant has 3 days thereafter to object as to form.

IT IS SO ORDERED.

Dated: May 5, 2022

_____
Honorable Judge André Birotte Jr.
United States District Judge